Filed 8/16/22  P. v. Guzman CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SANTOS DE JESUS PORTILLO GUZMAN,<br><br>    Defendant and Appellant. | C095302<br><br>(Super. Ct. No. 17CR002230) |

A jury found defendant Santos De Jesus Portillo Guzman guilty of committing multiple sex crimes against his two daughters, including continuous sexual abuse of a child under 14 years old (Pen. Code, § 288.5, subd. (a))[1] and sexual penetration by force or duress of a minor over the age of 14 (§ 289, subd. (a)(1)(C); count VIII).  The trial

---

[1] Undesignated statutory references are to the Penal Code.

1

court sentenced defendant to a determinate term of 10 years in prison--the upper term of the applicable triad--on count VIII, plus 130 years to life in prison on the other offenses.

In our prior unpublished opinion of April 16, 2021, we agreed with the parties that under section 288.5, subdivision (c), defendant could not properly be convicted of continuous sexual abuse and also specific felony sex offenses against the same victim when the crimes were alleged to have occurred in the same time period. We reversed defendant's convictions on two counts (one for each victim), vacated defendant's sentence, and remanded the matter for resentencing. (See *People v. Portillo Guzman* (Apr. 16, 2021, C087841) [nonpub. opn.] (*Portillo Guzman*).)

On remand, the trial court again sentenced defendant to the upper term of 10 years in prison on count VIII, and indeterminate life sentences on the remaining counts, but did not recalculate the custody credits or amount of mandatory costs previously imposed.

While defendant's appeal was pending, section 1170 was amended by Senate Bill No. 567 (Stats. 2021, ch. 731, § 1.3) (Senate Bill No. 567).

On appeal, defendant contends (1) Senate Bill No. 567 applies retroactively to his case, and remand is necessary for resentencing on count VIII; (2) he is entitled to additional custody credits that the trial court did not calculate when it resentenced him; and (3) the amount of his statutorily mandated costs should be corrected in light of our reversal of two of his convictions in the prior appeal. The Attorney General agrees with defendant's second and third claims, as do we. We will modify the judgment accordingly.

As for defendant's claim regarding Senate Bill No. 567, we decline to remand as the error in sentencing defendant under the prior version of the statute was harmless. Accordingly, we affirm the judgment as modified.

2

FACTUAL AND PROCEDURAL BACKGROUND

In January 2013, defendant's wife and children moved to California to live with his wife's brother. Defendant joined his family in California some weeks later, resuming the sexual molestation of his two daughters that had begun in another state. Defendant and his family moved to their own apartment in April 2013, and defendant left his family in November 2014. (*Portillo Guzman, supra*, C087841.)

After the family moved to their own apartment, and when defendant's younger daughter was 12 years old, defendant brought her home from school most days, and the two were alone for about an hour. More than once a week defendant dragged his younger daughter into his bedroom, removed her pants and underwear, and then had sexual intercourse with her. Defendant continued sexually assaulting his younger daughter in this way until he left his family. (*Portillo Guzman, supra*, C087841.)

After defendant's older daughter turned 14 years old, defendant started digitally penetrating her vagina, telling her that he needed to check to see if boys were touching her there. Defendant did this more than five times. (*Portillo Guzman, supra*, C087841.)

An amended information charged defendant with multiple crimes against both daughters, including continuous sexual abuse of each (§ 288.5, subd. (a); counts IV & V), and, as to the older daughter, sexual penetration by force or duress of a minor over the age of 14 (§ 289, subd. (a)(1)(C); count VIII). The jury found defendant guilty on all seven counts it was asked to decide, and the trial court sentenced him to the upper term of 10 years in prison on count VIII, plus 130 years to life on the remaining counts. (*Portillo Guzman, supra*, C087841.)

The probation report prepared for the August 2018 sentencing had opined that defendant was ineligible for probation and listed a number of "criteria affecting probation," including that the victims were vulnerable in that they were assaulted by their caretaker, defendant exhibited criminal sophistication by arranging time alone with his victims, defendant "absolutely" took advantage of a position of trust, and defendant

3

expressed no remorse for his crimes and denied any wrongdoing. The probation report also listed three circumstances in aggravation of the relevant count (Cal. Rules of Court, rule 4.421): that the victim was particularly vulnerable, as she was alone with defendant and could not protect herself; that defendant demonstrated "planning and some criminal sophistication by purposefully arranging time alone with the victim"; and, that defendant took advantage of a position of trust in that he was the victim's biological father and caretaker at the time of his crimes.

At the sentencing, the trial court commented on defendant's "depravity," observing that he had "committed numerous and horrific sexual acts of abuse upon [his daughters] for a period of years." The court found defendant had "breached his obligation as a father; the obligation that he had to protect his children who should be able to trust him . . . ." "And while the defendant has no prior criminal record, the aggravating factors in this case far outweigh any factor in mitigation. Both victims in this case were particularly vulnerable, they were children, physically and psychologically unable to protect themselves. The sexual abuse was planned," as defendant "planned opportunities when he would be alone with one or the other victim to abuse them. And finally, he took advantage of his position of trust in abusing the victims." The court added that "[a]ll of these aggravating factors support this court's decision to impose the upper term."

The abstracts of judgment from defendant's 2018 convictions reflect the trial court ordered defendant to pay a mandatory court security fee of $280 pursuant to section 1465.8 ($40 per count), and a mandatory criminal conviction assessment of $210 pursuant to Government Code section 70373 ($30 per count). The abstracts of judgment further reflect the trial court awarded defendant 381 days of credit (332 actual days credits and 49 days of conduct credits).

4

In the previous opinion, we reversed defendant's convictions on two counts and otherwise affirmed the judgment but vacated the sentence and remanded for resentencing. (*Portillo Guzman, supra*, C087841.)

On remand, the trial court declined to order a new probation report but told defense counsel he would be permitted to present any "positive behavior" that counsel wished to present at the upcoming sentencing hearing. At the November 2021 resentencing hearing, the court accepted counsel's representations regarding defendant's completed programming and lack of discipline in prison thus far but explained in relevant part that it "would not be modifying [defendant's] sentence other than to comply with the appellate court ruling, given the underlying seriousness of the offense[s]. [¶] Therefore, the Court sentences . . . defendant -- and I am incorporating my prior statements at the original sentencing -- to the upper term of ten years on Count 8."

The trial court did not recalculate defendant's custody credits and did not reduce defendant's mandated costs previously imposed at the 2018 sentencing. Defendant timely appealed; the case was fully briefed on May 31, 2022 and assigned to this panel on June 1, 2022. The parties waived argument and the matter was deemed submitted on August 12, 2022.

## DISCUSSION

### I

### *Senate Bill No. 567*

The parties agree Senate Bill No. 567 applies retroactively to count VIII (the sole count on which a determinate term was imposed). Defendant argues his case should be remanded for a new sentencing hearing pursuant to amended section 1170 because the trial court did not find true beyond a reasonable doubt the facts underlying the circumstances justifying the upper term on count VIII. The Attorney General counters that remand is unnecessary and any error was harmless. As we next explain, given the specifics of this particular case, we agree with the latter view.

5

A. *Senate Bill No. 567 Applies Retroactively to Defendant's Case*

At the time defendant was sentenced, former section 1170 provided that when a judgment of imprisonment is to be imposed and a statute specifies three possible terms, "the choice of the appropriate term shall rest within the sound discretion of the court." (Former § 1170, subd. (b).) To inform the sentencing court's decision, the California Rules of Court list various circumstances in aggravation and mitigation, including rule 4.421(a)(11): "The defendant took advantage of a position of trust or confidence to commit the offense."

Senate Bill No. 567 amended section 1170, effective January 1, 2022. Under the newly amended version of section 1170, when a judgment of imprisonment is to be imposed and a statute specifies three possible terms, "the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in [§ 1170, subd. (b)(2)]." (§ 1170, subd. (b)(1).) Section 1170, subdivision (b)(2) provides that the trial court may impose a sentence exceeding the middle term "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."

Nothing in the statutory language or legislative history of Senate Bill No. 567 indicates the amendments to section 1170 were intended to apply prospectively only. Moreover, Senate Bill No. 567 is an ameliorative statute because it provides for a presumptive middle term absent the presence of properly proven circumstances in aggravation. (§ 1170, subd. (b)(2).) Enacting restrictions on the trial court's discretionary ability to impose an upper term under section 1170 constitutes an ameliorative change in the law by reducing the possible punishment for certain defendants. (See *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 303; *In re*

6

*Estrada* (1965) 63 Cal.2d. 740, 744.) Thus, we agree with the parties that under *Estrada*, Senate Bill No. 567's amendments to section 1170, subdivision (b) apply to this case.

B. *Harmless Error*

Here, it is undisputed the trial court did not have the benefit of these amendments at the time it sentenced defendant to the upper term on count VIII. But in cases where there is no reasonable doubt but that the same result would have been achieved if applying the newly amended statute, this error may be construed as harmless beyond a reasonable doubt. (See *People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1111 (*Zabelle*); *People v. Lopez* (2022) 78 Cal.App.5th 459, 465 (*Lopez*); *Chapman v. California* (1967) 386 U.S. 18.)

"[U]nder the new version of the triad system set forth in section 1170, the initial relevant question for purposes of determining whether prejudice resulted from failure to apply the new version of the sentencing law is whether the reviewing court can conclude beyond reasonable doubt that a jury would have found true beyond a reasonable doubt *all* of the aggravating factors on which the trial court relied in exercising its discretion to select the upper term. If the answer to this question is 'yes,' then the defendant has not suffered prejudice from the court's reliance on factors not found true by a jury in selecting the upper term. However, if the answer to the question is 'no,' we then consider . . . whether a reviewing court can be certain, to the degree required by *People v. Watson* (1956) 46 Cal.2d 818, 836, that the trial court would nevertheless have exercised its discretion to select the upper term if it had recognized that it could permissibly rely on only a single one of the aggravating factors . . . rather than all of the factors on which it previously relied." (*Lopez, supra,* 78 Cal.App.5th at p. 467, fn. 11; see also *Zabelle, supra*, 80 Cal.App.5th at p. 1113.)

Application of this requires us to examine whether the " 'evidence supporting th[e] [single permissible] factor is overwhelming and uncontested, and there is no "evidence that could rationally lead to a contrary finding." ' " (*Lopez, supra,* 78 Cal.App.5th at p. 465.)

Here, the record is overwhelming and uncontested that defendant is the father of the sisters he sexually abused. The record (in the form of the older daughter's testimony, which the jury obviously believed, beyond a reasonable doubt) further reflects that defendant facilitated his digital penetration by duress of his 14-year-old daughter (count VIII) by implicitly invoking his parental role, telling her he needed to check to see if boys were touching her. On this record (especially because defendant actually *invoked* his parental role to facilitate count VIII) a jury would have unquestionably found that defendant took advantage of a position of trust to commit count VIII. (See *People v. Baughman* (2008) 166 Cal.App.4th 1316, 1323 [because "a jury would have unquestionably found that defendant took advantage of a position of trust" to commit incest and oral copulation with his 14-year-old daughter, the trial court's sentencing error was harmless beyond a reasonable doubt].)

Next, we ask whether the record clearly indicates--"to the degree required by *People v. Watson*"--the trial court would have exercised its discretion to impose an upper term based on a single permissible aggravating factor. (*Lopez, supra,* 78 Cal.App.5th at p. 467, fn. 11.) In light of the trial court's comments at sentencing, we conclude the answer is "yes."

At the November 2021 resentencing hearing, the trial court declared it "would not be modifying [defendant's] sentence *other than to comply with the appellate court ruling,* given the underlying seriousness of the offense[s]." This is a clear indication the trial court again *wanted to impose the upper term on count VIII*; thus, the question for us is whether it could have properly been done under these circumstances.

8

At the resentencing hearing, the trial court explicitly incorporated its prior statements from the original sentencing, as we have described. At the original (2018) sentencing, the court commented on defendant's "depravity" in committing the "horrific" and "horrible" sex offenses against his daughters, and expressed the sentiment that, in doing so, "defendant . . . *breached his obligation as a father*; the obligation that he had to protect his children who *should be able to trust him*." This is a clear indication the trial court would have exercised its discretion to impose an upper term based solely on defendant's taking advantage of a position of trust to commit count VIII. The court focused on this factor in its comments as well as its findings, and we are able to determine that the court would have been persuaded by this factor alone to impose the upper term. (C.f. *Zabelle, supra*, 80 Cal.App.5th at p. 1113 [remanding for resentencing where based on the record before it the reviewing court was *unable to determine* whether the trial court would have imposed the same sentence if left with only the properly proven aggravating factors].)

Accordingly, we conclude there is not a reasonable probability the trial court would have exercised its discretion to impose a punishment other than the upper term for count VIII.[2]

II

*Custody Credits*

We agree with the parties that the trial court erred by failing to recalculate defendant's total custody credits.

---

[2] Defendant argues that "a reasonable probability exists that had a jury weighed the aggravating and mitigating factors, it might have limited [defendant's] punishment" on count VIII "to the middle term." We agree with the Attorney General that this argument "rests on an incorrect premise," as it is generally the trial court, not the jury, that *selects* the appropriate punishment after considering sentencing factors. Senate Bill No. 567 did not change this.

Pursuant to section 2900.1, when a defendant has served a portion of a sentence imposed based upon a judgment which is subsequently modified during the term of imprisonment, the time served "shall be credited upon any subsequent sentence he may receive upon a new commitment for the same criminal act . . . ." When a defendant is resentenced, all actual time spent in custody, whether in jail or prison, should be credited against the modified sentence, and such credit should be reflected in the amended abstract of judgment. (See *People v. Buckhalter* (2001) 26 Cal.4th 20, 37, 41.) This is not to say, however, that a defendant is entitled to additional credits for good behavior as a presentence detainee. Once a defendant is sentenced and committed to prison, he remains in the custody of the Department of Corrections, serving time against his ultimate sentence, despite any later resentencing. (*Id*. at p. 40.)

Upon resentencing defendant on November 18, 2021, the trial court failed to recalculate defendant's total custody credits. Under section 2900.1 and *Buckhalter*, the court should have done so. (Further, the clerk of the court failed to replace the sentencing date on the abstract of judgment for defendant's determinate sentence.) Agreeing with the parties' identical calculations, we find the total credits owed to defendant (from his arrest to the November 2021 resentencing) to be 1,529 days. We modify the judgment accordingly.

III

*Costs*

We also agree with the parties that because we reversed two of defendant's seven convictions in the previous opinion, the costs portion of defendant's judgment must be reduced accordingly; the new totals should be a court security fee of $200 ($40 per count) and a criminal conviction assessment of $150 ($30 per count). We modify the judgment accordingly.

10

## DISPOSITION

The court security fee (§ 1465.8) is modified to $200. The criminal conviction assessment (Gov. Code, § 70373) is modified to $150. The judgment is further modified to award defendant a total of 1,529 actual credits, with no change to conduct credits.

As modified, the judgment is affirmed. The trial court is directed to forward certified amended and corrected abstracts of judgment (reflecting a sentencing date of November 18, 2021) to the Department of Corrections and Rehabilitation.

 

 

 

 

/s/
Duarte, Acting P. J.

We concur:

/s/
Hoch, J.

/s/
Earl, J.